I'm sorry I'm sorry the case of Joshua Aaron Holloman and the City of Los Angeles is now submitted. We're now ready to proceed with the case of Stephen Hubbard and Amy Back versus the City of San Diego and Does 1 through 10. Thank you. Good morning. May it please the court. My name is Brian Pease. I represent plaintiffs and appellants Stephen Hubbard and Amy Back, both of whom were threatened with and or in some cases actually issued citations for something that they said in a public park. And in order to reach the issue that the district court determined, which is that the words that were being spoken are not protected by the First Amendment, requires getting into the content of what they were actually saying. So the issue of whether teaching yoga is protected by the First Amendment, I believe that it should undergo just an ordinary constitutional analysis. You look at whether the ordinance is content-based, in which case you would apply strict scrutiny. If it's not content, even if it's not protected by the First Amendment, the district court didn't even get to that stage because the judge felt that the words that were being spoken did not qualify for First Amendment protection. But in order to make that determination, you have to actually get into the content of what's being spoken. And the only type of words that convey an idea or can be understood by the listener that would not be protected by the First Amendment would be words that are categorically exempt. So things like fighting words or obscenity or threats, something that's just excluded from First Amendment protection. I don't know if you'll know the answer to this question. It's probably not relevant, but do you know how yoga ended up being sort of singled out in this ordinance? I mean, I'll ask the city this too. Thank you, Judge Thomas. That is a great mystery to my clients as well as myself. And part of what we did here, I went through the legislative history. It was a shock to the community and to the plaintiffs and to others because the ordinance that was passed last year was to deal with the issue of sidewalk vending. That's what it was agendized as. That's what the public notices were all about. There was no comment. There was no notice. The community had no idea that yoga was going to be, teaching yoga was going to be singled out here. It was, this is to do with a commercial activity and sidewalk vending. And then somewhere buried within the ordinance are these references to, not only in the definition of what constitutes a quote-unquote providing a service, is defined specifically as yoga. And then there are exceptions for expressive activity. And there's an explicit exception for teaching yoga. So it's unclear how that got in there. But this has been a long-running thing. So 11 years ago, Mr. Hubbard was cited for an earlier version of this ordinance, which does still exist. There is still the provision in the same ordinance that if you have 50 or more persons assembled without a permit, then that's a violation of this of the same ordinance under a separate section. And a San Diego Spirit Court Commissioner ruled that that was unconstitutional as applied to the teaching of yoga and what Mr. Hubbard was doing. Then there was some kind of internal dynamic within the city. But over the years, eventually the result was, well, first there was a memo issued by a then-Deputy City Attorney, who is now our elected City Attorney, wrote a memo opining that the Commissioner was wrong and that yoga could be specifically, teaching of yoga could be specifically regulated or banned in a public forum in this case. And then that's exactly what ultimately ended up happening. But it wasn't, it was never the intention that we can see and that the public was given notice of. Does the city, does the city ban or not allow other types of teachings in the park? So if it's not teaching yoga, but you know, teaching philosophy or teaching something else, is there anything comparable? Thank you, Your Honor. That would definitely, teaching philosophy would definitely fall under the definition of expressive activity. So that would be exempted. But then because there's an exception to the exception for expressive activity for teaching yoga, that's why the teaching of yoga doesn't fall under that. The district court analogized it to teaching fitness classes, which we're not here, our position is that yoga is different than just, you know, exercise classes where you're just running through routines. There's a philosophical component. The poses actually mean something that's explained to the students. So it's, it's, but I had a question about it. Are there, are there ever instances of yoga instructors who do not intend to impart the philosophy of yoga? And would that impact our analysis? Whether there are, that's not part of the record in this case. The yoga instructors in this case, as well as some declarants, have stated that it's, there's always more than, it's more than just a physical practice. It's a meditation, it's a mental practice as well. But even, so if we were just talking about just going through, you know, to use the exercise class analogy, which, which is another thing that's in the ordinance, which we're not challenging, but maybe that's unconstitutional too, you know, we're not here to quarrel with that part of it. But if, if you're just telling somebody to do a certain exercise and the judge, the district judge analyzed it more as an issue of expressive conduct rather than speech. So if you were, for example, describing certain things, it's still communication because people are seeing what's being done and they're following it. How communicative that is, you go through the analysis of expressive conduct versus speech. But here we have actual speech, where it's the yoga instructors are actually saying things. They're not, you know, doing all these poses. They're actually instructing the students. They're saying things. And it is because of the words that are being spoken that they're being cited under this ordinance, the prohibiting teaching of yoga. And if there's more than, and it's only if there's more than four people assembled. I understand your argument that you think it's speech in addition, like pure speech in addition to expressive conduct. But I'm just curious, what do you think is your best case for saying that it is expressive conduct? Well, the best case that supports that this is expressive conduct. Certainly this is. Are you completely reliant on the speech as well? We're relying upon the speech. But if you were just talking about somebody engaging in certain postures and somebody, people start to happen to show up and start following those same postures and suddenly there's more than four people and now the person that's being followed by the people who show up is now suddenly, you know, violating the law because more than four people showed up to watch. And clearly they're understanding something that's being conveyed. But it's much more when it's teaching. What's your best case on expressive conduct? Well, certainly the San Diego Superior Court Commissioner ruling from 2011, I think it is persuasive. But the case that's cited within that, which is Long Beach Area Peace Network versus City of Long Beach, it doesn't get into, and that's that is cited within the Superior Court decision, and it's a Ninth Circuit case, 574 F. 3rd, 1011. And that goes through, you know, a very extensive analysis about how the burden is, particularly in a public forum, the it's automatically suspect when the government attempts to regulate speech and the burden is always on the government to show this not only substantial interest but the narrowly tailored means. And in this case we have a content-based ordinance because in order to even get into the inquiry, okay, is what they're saying protected? You have to say, well, what are they saying? And that's a content-based distinction. So Ward v. Rock against racism is also, and we cited that extensively because it goes through the analysis, it's really just a general free speech analysis. The district judge kept asking, well, do you have a case that says teaching yoga is protected speech? And that, to me, sounded almost like a qualified immunity type argument that unless we can show a published case saying otherwise, but this is a Monell case. We're challenging the ordinance itself. We don't need to say... I wanted to ask you because you're also raising a facial challenge. Right. And so in the service section of the of the ordinance, it just talks about yoga, not teaching yoga. And so is it your view that the city can't regulate other forms of yoga, let's say a commercial type of yoga? People show up to to pay for a class, a yoga class, on the park. Is that encompassed within your claim as well? Presumably because if it's a facial challenge that you're saying... Thank you, Judge Sanchez. That is correct that it does not say teaching yoga in the services definition. It states yoga, but it's the provision of intangible items. So I don't know how you provide yoga to somebody without teaching it. So it seems that that is what the ordinance is. Let's say people get together and just decide to do yoga together and no one's teaching. You know, Tai Chi, which I'm going to ask your fellow on the opposite side about. But no one's teaching, you're just going through the movements. Is that something that the city should not be allowed to regulate or regulate? Well, it should be treated like any other activity in the park. So if more than four people show up and start doing something, whether it's a picnic or Tai Chi or throwing a Frisbee around, that's activity that's typically going to be in a park. But then if there's somebody that's actually... what the city has defined as providing that service, which I guess if somebody is explaining what the movements mean and they're leading people through it, then that's considered providing the service. But it's lumped in there with, you know, dog training. I'm just trying to understand what is the basis for your facial challenge? Because it doesn't seem very clear. What evidence supports your facial challenge here? The evidence is that the plaintiffs were threatened and in some cases actually issued citations for teaching yoga under this ordinance. And it is a literal reading of the ordinance. In other words, the officers weren't... the rangers were not incorrectly applying the ordinance. The ordinance specifically calls out the teaching of yoga. It exempts it from expressive activity. And it's important to note that there's a distinction. There's three separate categories. So in subsection 14 of the definitions, we have commercial activity and services. It's providing a service. So providing yoga or teaching yoga is a service separate and apart from a commercial activity. So one could be engaged in a commercial activity and that's defined in here. And you could be cited for that. But even if it's not commercial and you're just merely the act of teaching yoga for free and there's no commercial activity involved, that's a separate element of the ordinance. So there's these three separate elements. There's commercial activity, there's service, and then there's solicit offers to purchase barter or require someone to negotiate, establish, or pay a fee before providing a service. So it's three separate things that could be cited. So the remainder for rebuttal in this court has additional questions. Thank you. Thank you, Your Honor. Good morning and may it please the court. Assistant City Attorney Manny Arambula here on behalf of the Pele, the City of San Diego. Chief Judge Murguia, thank you for clarifying that in fact our case wasn't submitted because although it's been a pleasant drive up here, I was looking forward to making this argument. I'm sorry about that. No worries, Judge. So the District Court correctly found that the appellants failed to meet the high standard for the grant of a preliminary injunction in this case. The preliminary injunction was an effort by appellants to forestall the enforcement of San Diego Municipal Code Section 63.0102 C14, which is services. So amongst the other things that it addresses is the provision of services on city property. In this particular instance, parks. Although this is offered like in different types of scenarios such as recreation facilities, things of that nature. And the reason the District Court in this particular instance denied the request for a preliminary injunction is because it never moved beyond its inception because the plaintiff appellants at this juncture failed to ultimately move beyond the issue of explaining to the court in a recognizable argument why the teaching of yoga is a particularized message and exhibits the likelihood that it would be understood. Can you answer the question that I asked at the outset, which is why is yoga singled out here of all the things that could be taught in a park? You could teach Shakespeare, you could teach Tai Chi, as I think Judge Sanchez will ask you about, you know, you could teach anything. But what, so what's it with yoga? Well, I'll just answer it this way, Judge Thomas. It wasn't singled out in the sense that that's what is actually barred. It was provided as an example of the services that can't be provided without a permit. And in this particular instance, as a matter of fact, I'll point out to you right now that it doesn't say, for example, yoga. It specifically looks like yoga is being targeted here in some way. And I'm just curious, and I think maybe we all are, what happened here that... Well, the issue, the city of San Diego has numerous beautiful beaches, and obviously engaging in activities such as yoga, other activities on the beach, it's a highly sought type of activity to do. But what the statute does, or I'm sorry, the ordinance, it doesn't regulate directly, regulate yoga. What it does is it requires individuals who want to have classes or any kind of commercial activity on the city's beaches to actually go and request a permit for a number of different reasons. But it says that teaching yoga is not an expressive activity, so it is directly targeting yoga. It doesn't talk about teaching anything, anything else. And there are, you know, there are a million things that you could, that you could teach. Right, but if that's even the case, Your Honor, let's assume here for a second that yoga is expressive activity. The city still has a right to regulate in an appropriate time, manner, and place restriction how that's taught. And that's actually a fairly straightforward analysis of any kind of business that the city can permit. And I just want to clarify here, the clearest example that yoga is not in fact targeted is that they can teach it. And you can see, even in appellant's briefing, that if there's three or less individuals, there's no permit required. Any activity that... But counsel, that, you know, let's say you have eight individuals that are being taught tai chi for free. Is that something that someone would need to get a permit for from the city under your view of the relevance? This specific one, no, because it doesn't fall within the strict language of subdivision C14. Doesn't that illustrate that yoga is being singled out? Because, I mean, I think you've got a bit of an uphill climb to say that teaching a certain subject matter that involves movements and the history and philosophy behind it is not expressive. It seems, you know, as we've been coming up with examples, there are many instances where you're teaching something and it's an express... You're speaking and you're expressing things about that subject area. And if you just said the tai chi would not be subject to it, I have a hard time seeing what the difference is between one type of activity versus another. Well, what I was pointing out is your example for the tai chi doesn't specifically... isn't specifically addressed by that subsection because they're its services. And it also requires that these services be provided with some economic benefit to the individual who's actually providing those services. There are other sections of the San Diego Municipal Code adjacent to that that describe situations where just things as gatherings or things like that. Or so, for example, subdivision C15 which provides that services... I'm sorry, a class or a lecture that is above four individuals has to have some kind of permit. So, but the specific subdivision that was challenged in this specific case ties in both the provision of services plus some kind of economic remuneration for the individual who's providing it. And that's what this specific challenge was about. But the statute, the ordinance doesn't necessarily require someone to be charged money for it, right? It could be free and it would still be subject to the ordinance. If the yoga was taught for free, it would still be subject to the ordinance, would it not? Not this specific one. It would be subject to other ones because what it does, at the end of the day, the point... I'm sorry, before you start that, because even though the city says it will give permits, the record tells us that the city isn't granting planners permits to teach yoga. No, what's happening, your honor, is that... so the allegation here has been that the city has banned it on the city's beaches. And the problem here is that none of the evidence at the hearing or even proposed by the appellants is that they've ever actually even applied for it. So they haven't even applied for it. And so they base their assertion... I think there's a provision that says they won't be granted... the city... I thought there was somewhere in the record that says they're not granting those to the yoga people. No, that's their argument. They're arguing that, in practice, none are handed out for the beach. That's what they're saying. Problem is, A, they've never applied for a permit or, at least as I understand it, Appellant Hubbard has never actually applied for a permit. They're just simply saying that we've asked individuals who may have this knowledge and this is what they're told, but they never actually literally applied for an actual permit. I was just gonna ask if you could just clarify your answer to Judge Sanchez's questions a moment ago about... it seems C-14 doesn't require that the person providing a service charge a fee before something is classified as a service. I mean, that section talks about commercial activities, then it talks about services, and then it talks about, you know, bartering and donations, etc. So I just want to make sure I understand correctly that this is only about if fees are charged? Go ahead. So, Judge Thomas, what it does here is essentially regulating commercial activity on city property because what it's doing is it's connecting the provision of commercial services with economic remuneration for the individual who's holding them. But what if someone teaches yoga for free? Well, that may be subject to another section of the Municipal Code which wasn't the one that was challenged here. But in this... Can I just pause you? Because C-14 says it is unlawful to carry on or conduct commercial activity, to provide any service, or to... and there's an ellipse here... require someone to pay a fee before providing a service. Those are in the disjunctive. And then later on it defines service as examples include yoga. So on the plain face of the ordinance, it doesn't require the charging of a fee in order to consider yoga as service that requires a permit. Right. So then that means you don't have to... you are also regulating yoga classes where there's no fee being charged to the people. That may be true, Your Honor, but... Under this, under this. Because you're saying under other ordinances, I'm saying under the challenged one, that seems to be the case here. Right. If you're calling it a service, that would be correct. Because if you're calling it simply a service that's being provided to that individual, it is regulated by this specific section. And what it's all... The gist of the challenged ordinance is that if you want to engage in commercial activity on city property, i.e. the beach in this particular instance or the city's parks, you have to seek a permit. Well, how can somebody teach yoga under the ordinance without it being considered a service? How is that possible? Right. That's correct. And so that is, by definition, a service. Or if they so choose to challenge it in that fashion, and I think that more after this specific hearing, they've moved to the argument that, in fact, it is a lecture because they're applying a slightly different definition for it. But in this particular case, they chose to challenge it as the provision of a service. And the problem with the application of that to this is specifically that... I think the problem with the initial preliminary injunction request was that it mentions any number of different types of First Amendment qualifications that have to be met in order for the ordinance to actually be considered. So, for example, plaintiff appellants have actually claimed that it is due to... that it should be subjected to strict scrutiny. They never actually addressed what this in all likelihood, which is commercial activity. Because if we were to move beyond the first prong of proving that, in fact, teaching yoga is subject to some kind of regulation as a commercial activity or as expressive activity, we just haven't gotten that far. And point of fact, in this specific case, the district court directly asked all the parties, do you have any type of authority that would suggest that a similar type of activity or yoga, and I looked as well, is any kind of expressive activity or anything of that nature? And the answer was clearly no. And I've been looking ever since, and I've yet to find anything that even remotely suggests that teaching yoga or teaching meditation, teaching tai chi, or something like that is expressive activity. It's not. If anything, just... But explain why, because I think that's at the heart of this case. If you're teaching Socrates or teaching Shakespeare, would you say that that's not expressive activity? Not under the circumstance of this. Why isn't it just pure speech? Why isn't it pure speech? Because pure speech... So what's happening here is that the speech that's being regulated is secondary to the actual regulation that the city intends, which is to say groups of individuals gathering for a certain purpose, i.e. here to hear a lecture on yoga or to get a yoga class in. That's incidental to the issue about what they're teaching. So this is exactly what Ward versus Rock Against Racism discussed when they were talking about. If the ordinance itself has an incidental effect on speech, because what its primary purpose is doing is taking care of a, or actually putting forth a priority that the city has, it's different precisely because it's not targeted. And what do you say your best case is for why teaching yoga is not protected speech? What's your best case? The best case scenario in this particular case, and the one argument that hasn't been made, is that it's commercial speech. And precisely because it is commercial speech because it is being done for remuneration. Any of the tips, however you want to frame them, that plaintiff appellants get, that's all taxable income. But you're saying it's commercial speech even if it's not done for payment. I mean even if it's done for free, you're saying, it's still commercial speech. So I just don't. So if it's done for free, it's not commercial speech? It may not be, but it's also not also expressive conduct. I have, so herein lies the problem. It's not commercial speech if it's free, but it's also not expressive conduct? Why? So my argument is that it is commercial speech. Because it meets the Hudson test. Because it actually does those things that the central Hudson test or court requires. Because it asks, does the activity propose a commercial transaction? Okay, but assume for purposes of the question that it is being taught for free. Okay, if we're assuming that it's being taught for free, it's still not, it well, it may or it's, that would may take it outside the realm of commercial speech. But it's... Does it put it in the realm of speech? It's a speech. No, because what's being regulated here at its core, the city isn't regulating what these instructors say, but rather the gathering of those individuals. Oh, you're prohibiting them from saying it. Permitting, yes. As you're prohibiting the gathering, you're prohibiting the speech. Doesn't that matter? It does, but only secondarily, which is exactly what's permissible. I mean our First Amendment case law very often talks about, if the government requires permits before someone can speak, that is a regulation of speech. Right. Right, and so that, I think that's what we're trying to get at here. I think that this court's case, BL Productions Inc. versus Newsom, is probably the closest analog we have to the situation here. Precisely because there, what's happening is that there's a, the transformation of a business transaction. So appellants here don't, they don't claim that they're doing it. They say that the fees that they're getting are sub, you know, they're, the individuals who attend can either offer them or not. But at the end of the day, the question is, but for that economic incentive, do these, does the teacher show up? I think the obvious answer is no, precisely because if there was less than three individuals, there's no need for a consummating that business transaction is non-expressive conduct unprotected by the First Amendment. That's from B&L. That argument there, because the gun salesmen that wanted to have set up their, set up shop and, what is it, the Del Mar Fairgrounds and the Orange County Fair, what they were arguing is their rights to actually speak about guns and the Second Amendment is being infringed because they're not being permitted to do so there. We have a very similar situation here, because what's going on is they're saying, we want to gather, outside of any kind of regulation, on the city's beaches in order to engage in this specific activity. Can I ask this? One of your examples for expressive activity has a commercial quality to it, and that's the sale of artwork. And you can also solicit funds and donations and subscriptions for nonprofits. And so there's a commercial aspect to other things that the city has decided is expressive conduct itself and taking it out of the permitting requirement. What's the difference between those two things? Because obviously commercial isn't the be-all end-all to those things. Right, right. So quite frankly, those particular, those particular activities have been found to have been expressive because they're communicating some kind of viewpoint. Whereas in this particular case, we're not talking about, unlike B&L, we're not talking about the yoga instructors actually showing up trying to convince somebody, please come to my class, here are the things that we offer. That's at the point of sale. What they're doing here, by the time these individuals go to the beach to attend the beach class, what's happened is they've already agreed to go there. And what's being taught is a course, call it whatever you want, but it is a course in this specific instance in yoga. And then those individuals, after that, make some kind of payment to these individuals. And I think the appellants would tell you this, they have a QR code, they're paid, they're paid in tips, which in of itself makes it an actual economic activity, whether or not everybody donates or not. And all the city's trying to do is literally, they're simply trying to regulate this in a fashion, because some of the other mundane things that the city does with respect to this particular use of any specific park, but in this case, Sunset Cliffs Park, or in this particular set, Palisades Park South, is they're trying to ensure that, for example, two individuals don't go. So one of the things that happens at this park is that there's weddings that are held, people go, they pay their good money, and then they set the park aside. Without the city's permitting process, what can happen is, you can have a number of individuals there for a yoga class when somebody else has already planned a wedding there, and they've paid, and they've set that aside. And that just begins to address all of the... Well, but you have the expressive activity areas, so I mean possibly yoga could, I mean, I don't know, that's not the question we're answering, but you do have areas set aside for that expression. It's not like this necessarily has to be happening everywhere at any time, but the way that the ordinance is written, yoga is not an expressive activity. That is correct, Your Honor, and those expressive activities areas, those are first-come, first-served, or if you reserve them, if they're reserved, they're reserved for the individual who goes in and says, I meet the criteria for expressive activity, I want to use it, and if they're unused, any individual can simply show up who meets the criteria for the city's expressive activity ordinances and say, I'm gonna use it, and they're permitted to do so. But that's not what's happening here. Here, what's happening is, spontaneously or at the direction of the appellant, they literally show up, they have a class with speakers and numerous individuals and overwhelm this area, and this is the kind of regulation that is common across the country. In other words, what we're doing is simply saying, if you want to engage in an activity of this nature or any other type, we want to know, because there's numerous situations that maybe need to be addressed. Like, I'll give you one last example. I know the court has already indulged me quite a bit of time, but the park that is in the appellant's complaint and also appears in numerous other areas of the record is called Sunset Cliffs Park. The reason that's notable is that Sunset Cliffs Park itself is quite frankly known for its coastal erosion. This court can take judicial notice of the city's website and numerous areas where what happens is the city has to actually take care to make sure that the erosion there doesn't become an issue of public safety, which it has. As a matter of fact, Sunset Cliffs Park itself has been the site of numerous deaths and serious injuries over the years. So this is not only an issue of a mundane action, such as making sure that two separate groups of individuals are not trying to use one spot. This goes to the core governmental functions that the city engages in on a daily basis. So, for example, Sunset Cliffs Park just had some remediation of some erosion. A fence was put up on, I believe, December 29th, just a couple of months ago, precisely because some of this was reported. And it's a 68-acre park. It takes a number of rangers to ensure that in fact what's happening there is safe for the people who want to do it. Because one of the things that happens is you apply for a permit, you tell the individuals, I want to have this many individuals, this is the activity I want to do. They have to have insurance that covers any liability where the city is named as a added beneficiary. So this regulation is meant to address not only what happens there in terms of issues related to public safety and other common issues, but also just simply the orderly use and preservation of the city's parks. Thank you. I just did want to note that the declaration of Amy Bach at 2 ER 146 indicates that they have applied for permits and have been denied. So I don't know if you know that as well. I can tell you, Your Honor, that that is absolutely not the case. It's not on the record. Well, it's in the record at ER 146. Yes, I recognize that that's the case, Your Honor. But I will, I mean, obviously this is not before the court, but I can certainly tell the court that I, after that specific submission... I don't really want to hear if it's not on the record, but I'm just telling you what's in the record before us because that's what we're gonna have to rely on. Yes. Okay. Thank you very much. Thank you. Thank you, Your Honors. And yes, Judge Mergia, not only does it state that she attempted to get a permit, but that the communication from the city and the ranger's office was that in fact no permits are issued for parks and shoreline beaches for teaching yoga. So that's in the record. That's unrefuted. This idea that somebody could apply or have a permit for a wedding or something like that and then the yoga class is going to interfere with it, you would deal with that the same way you would with any other use of the park. Anybody that's in that space, if somebody has a permit for a wedding or some activity that's been permitted, the people that are not permitted are going to be excluded from the space. But the fact that the people are there practicing yoga should not just be on the grounds that somebody might apply for a permit for something else, just never allow that activity. So it seems like the city is just relying that this is commercial speech and doesn't constitute expressive conduct in any way that puts it outside the realm of commercial speech. Well the declarations make clear that the plaintiffs and others offer free as well as donation based yoga classes. The donations are secondary. These are professional yoga instructors. They teach in studios. They have jobs. This isn't their sole source of income. They're out there, they state this in the declarations, that they're teaching these classes or they were teaching these classes to give back to the community, to speak to a wider audience. They don't want to just spend their Saturday teaching yoga to three people. They want to offer it to the community and it's a way for people. But even if it's, I guess, if it's economically, you know, there's some economic aspect to it, does that matter here, even if it's commercial speech? That's not what they're being cited for. And we do go through the case law on that, that even soliciting donations, that is protected. There are other activities in there that have some type of a solicitation or donation purpose that are permissible under the, or that is not what the plaintiffs are being cited for. They're being cited for the actual teaching of the yoga. And we have on 3ER322 of the record, subsection C24 of the ordinance, regulates large groups. So if you have more than 50 people showing up in unison and doing something, unless it's expressive activity, they need a permit. So if people are just spontaneously showing up and doing yoga without anybody leading them, or perhaps Tai Chi, if it's more than 50 people, it's going to fall under that. But if it's more than four people, if there's somebody leading them, just the mere fact that there's somebody that's actually speaking and leading the group, that person is going to be cited. So it's not, and there's no agreement, there's no prior agreement for people to, you know, negotiating this in advance that they're going to show up. The instructors go out, they, and this is in the declarations, anybody can sit down their mat anywhere, it's just like any other use of the park, and the yoga instructor is simply offering instruction, people can show up or not show up. It's not arranged in advance, I don't know what Mr., what the city was referring to with a QR code, that's not in the record. There is talk about coastal erosion on 2 ER 71 of the record, there's a photograph of the Rangers driving their two giant trucks right onto the area where Ms. Bach had been teaching her classes. So the idea that people practicing yoga on those, on that area is going to somehow erode the cliff is also red herring. And it really does come down to the instructors are being targeted for the speech and the teaching, and you know that because if people are just spontaneously engaging in an activity, unless it's more than 50 people, it's not a violation of the ordinance, but if there's somebody teaching or leading or providing the service of actually speaking the words that people are following and understanding that suddenly that act of speaking in a park is what's being targeted here by the ordinance, not the possible off-site acceptance of donations or if somebody sends, sends a donation by Venmo or makes a donation in a donation box in Mr. Hubbard's front porch across the street, that's you know completely up to them. It's not, it's not what they're being, it's not what the instructors are being cited for. They're being cited for teaching yoga in a park. All right, thank you very much. Thank you appreciate your oral argument presentations. The case of Stephen Hubbard and Amy Bach versus the City of San Diego in Dose 1 through 10 is now submitted. We are adjourned. Thank you.
judges: MURGUIA, SANCHEZ, THOMAS